USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                  :

In Re Application of                             :
T-SYSTEMS SCHEIZ AG and             :         1:20-mc-308-GHW
T-SYSTEMS AUSTRIA GESMBH       :
for an Order to Conduct Discovery for Use in  :        <u>ORDER</u>
Foreign Proceedings Pursuant to 28 U.S.C. § 1782.  :
                                                  :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

The Court has reviewed the Application (the "Application") of T-Systems Schwartz AG & T-Systems Austria GesmbH for Judicial Assistance Pursuant to 28 U.S.C. § 1782 ("Section 1782"). For the reasons stated on the record during the November 13, 2020 and December 2, 2020 teleconferences and detailed below, the Court finds that the Application satisfies the requirements of Section 1782, but for the fact that the subpoenas, as proposed, are overbroad and unduly burdensome. This order implements modifications to the subpoenas that limit their scope to an acceptable degree. With the modifications described here, the subpoenas are approved.

The proposed subpoenas are overbroad for a number of reasons, which are outlined in the Respondents' opposition, dated November 20, 2020, Dkt No. 33 at 3-27. The arguments presented by Respondents regarding the overbreadth of the subpoenas are sound. The Court outlines here some of the principal reasons for its conclusion that the subpoenas as drafted are overly broad. First, the definition of "IPSoft" is overly broad. The subpoenas define the term "IPSoft" to mean "IPsoft, Inc., and any of its subsidiaries or affiliates, agents, representatives, or other person representing it." Dkt No. 5-2 at 1. As a result, the Application seeks the production of information not only known to IPSoft, Inc., but also to other those other entities and representatives. And a number of the questions request the production of documents not only in the custody, possession,

or control of IPSoft, Inc.—the respondent—but also in the custody, possession, or control of those other entities and representatives encompassed within the overbroad definition of "IPSoft."

Second, the proposed time period for the collection required by the subpoena is too long. The subpoena defines the relevant timeline to be "June 2013 through the date of compliance." This time range—encompassing more than seven years—is simply too long given the contours of the underlying litigation. With respect to the front-end timeframe limitation, all of the pending and contemplated foreign proceedings featured in Petitioner's papers seeking the proposed § 1782 subpoenas relate to contracts that were executed after September 2015 and which featured integration clauses. With respect to the back-end timeframe limitation, by May 31, 2018 contractual relationships between all of the relevant parties had deteriorated, terminated, and culminated in litigation.

Finally, many of the requests are framed in a way that is overbroad and argumentative. For example, Request No. 9 seeks

> Documents evidencing Mr. Dube's knowledge or understanding of his obligations, legal or otherwise, and responsibilities in the capacities identified in Request 8. Without limitation, this Request extends to any and all documents evidencing Mr. Dube's responsibilities as Managing Director of IPSoft Switzerland and Executive Director of IPSoft Austria and pertaining to the LSA-Switzerland and the LSA-Austria.

The request is inappropriate in a number of ways: by requesting documents that "evidence" Mr. Dube's knowledge, the request first asks the respondent to probe Mr. Dube's knowledge and understanding. Then it asks the respondent to review all of the documents to determine whether, in the reviewer's view, they "evidence" his subjective knowledge or understanding. This question is argumentative, and overly broad. While the question expresses what the requester is interested in seeing, it does not provide a reasonable framework upon which the respondent can execute a search. This is just one example of the overly broad, argumentative questions posed by counsel for Petitioners that pervade the proposed subpoenas.

Respondents have objected to this request to the extent it assumes facts and contains legal conclusions. In their November 22, 2020 objections and responses, Dkt No. 33, Respondents have bounded this question and others in a way that would make them more capable of being responded to in a reasonable manner. They have proposed bounding Request No. 9 as follows: "non-privileged documents relating to Mr. Dube's appointment as (i) Managing Director of IPSoft Switzerland and (ii) Managing Director of IPSoft Austria, together with his knowledge of the appointments and their associated responsibilities, which are identified after a reasonable search." Dkt No. 33 at 11, 12.

> Another illustration of the overbroad nature of the requests is Request No. 15, which seeks
>
> Documents containing, discussing or relating to any assumptions(s) that IPSoft and/or its affiliates made regarding their obligations under the LSA-Switzerland and the LS-Austria. Without limitation, the Request extends to communications discussing or showing that IPSoft and its affiliates misunderstood and/or underestimated the scope and complexity of the services agreed under the LSA-Switzerland and/or LSA-Austria.

This request seeks information not only from IPSoft, which itself is an overly broad term as defined, but also all of the affiliates of the people and entities included within the definition. Respondents have proposed bounding this request as follows: "non-privileged documents relating to the obligations and services under the LSA-Switzerland and the LSA-Austria, which are identified after a reasonable search." Dkt No. 33 at 16. The Court has reviewed Respondents' proposed limitations on the scope of all of the questions proposed by Petitioner. As with the two illustrative responses described above, they all provide reasonable bounds for questions that are otherwise unduly broad, and frequently nearly unanswerable as framed.

The Petitioner's proposed subpoenas are also unduly burdensome. Respondents have proffered that even a narrowed version of Applicants' requests yielded over 100,000 documents, a large percentage of which are unresponsive, and 17,000 of which are not in English and would thus need to be translated before being produced. Respondents indicated that the cost of reviewing

3

foreign-language documents is double that of English-language documents. Respondents estimate that even with the request narrowed both temporally and in scope, the total cost of review and translation of would be approximately $80,000. November 11, 2020 Conference Tr. 14:4–11. And that figure does not include the time of principal trial counsel's review of responsive documents. *Id.* at 14:16–15:5.

"[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995). Accordingly, instead of denying the Application, the Court will approve it subject to the following limitations: The defined term "IPSoft" is to include only the named Respondent, IPSoft, Inc., and the time period covered by the subpoenas is to be limited to June 1, 2015 to May 31, 2018. Because of the overbreadth and argumentative nature of many of the questions, the scope of the questions will be bounded as proposed by Respondents in their November 20, 2020 objections and responses attached to the parties' December 2, 2020 letter to the Court, Dkt No. 33.

Given the substantial cost associated with the response to the proposed subpoenas, even with the limitations adopted by the Court, some cost sharing is also appropriate to protect the Respondents from incurring undue expense. In evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45. *See In re Law Firms of McCourts & McGrigor Donald*, No. M. 19-96 (JSM), 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001) (applying Rule 45 to determine whether applicants must pay respondents' reasonable costs and expenses for production of documents in complying with a Section 1782 request); *In re. Michael Wilson & Partners, Ltd.*, 520 Fed. Appx. 736, 741 (10th Cir. 2013) (same). Under Rule 45(d)(2)(B)(ii), when a court grants a motion to compel compliance with a subpoena, the court's order "must protect a person who is neither a party nor a party's officer from significant expense resulting from

compliance." "[T]he required protection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance. . . . A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *In re Law Firms of McCourts & McGrigor Donald*, 2001 WL 345233, at *1 (internal citations and quotation marks omitted). "[D]etermining each party's share of the cost of compliance turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *In re World Trade Ctr. Disaster Site Litig.*, No. 21-mc-100 (AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010). IPSoft, Inc. is a party to the underlying litigation; while Mr. Dube is not, he certainly has an interest in the outcome of the case. As a result, Respondents can reasonably be expected to bear a substantial fraction of the cost of production here. But given the private nature of the litigation, the request for the production of a substantial volume of documents in foreign languages imposes an incremental cost that should be shared by the parties. As a result, the Court directs that Petitioner pay the cost of translating any document that is not in the English language that they wish to have produced to them.

SO ORDERED.

Dated: December 16, 2020

_____
GREGORY H. WOODS
United States District Judge